CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 1 2 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DIRECTV, INC., | ) |
| Plaintiff, | ) Civil Action: 4:04CV00011 |
| v. | ) |
| LLOYD YANCEY and | ) By: Michael F. Urbanski |
| RONNIE RIDDLE, | ) United States Magistrate Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is one of thousands of civil enforcement actions plaintiff DirecTV, Inc. has brought around the country to combat the theft of the satellite television services it provides. DirecTV filed its Complaint against Lloyd Yancey on March 23, 2004. On August 29, 2005, DirecTV filed an Amended Complaint asserting claims against Ronnie Riddle. In its Amended Complaint, DirecTV alleges that Riddle manufactured, purchased and used illegal devices and equipment to surreptitiously view DirecTV's television programming without authorization by, or payment to, DirecTV, and that he illegally and without authorization, intercepted, received, and exhibited satellite programming. Moreover, Riddle divulged or published the existence, contents, substance, purport of such communications for his own benefit.

Service was made and perfected on Riddle on September 21, 2005 by delivering a copy of the Complaint to a family member found at Riddle's residence who was not a temporary sojourner or guest, was age 16 or older, and who was given information of the Complaint's purport in accordance with Va. Code Ann. § 8.01-296. Riddle has not plead or otherwise defended himself in any way, and the time for doing so having lapsed, the clerk entered default as to Riddle on October 20, 2005. See Fed. R. Civ. P. 55(a). Plaintiff's claim is not for a sum

certain, and so it falls to the court to enter a monetary judgment to which the plaintiff is entitled. See Fed. R. Civ. P. 55(b)(2).

1.   **Factual Background**

On November 4, 2005, DirecTV filed a Motion for Entry of Default Judgment, a Memorandum in Support thereof, and supporting affidavits. As was the case with the Amended Complaint, Riddle filed nothing in response to the Motion for Entry of Default Judgment.

DirecTV, Inc. provides a variety of television programming via satellite, including cable televisions networks, premium channels, sports packages, pay-per-view events and movies.[1] DirecTV encrypts its satellite television signal, which to be viewed must be decrypted by a programmable access card connected to the customer's television. Because anyone with a satellite dish can retrieve encrypted DirecTV signals, the key to the system is the programming on the access card. This software controls which stations are decrypted and which remain scrambled. Customers are billed according to the software they order to decrypt selected television programming.

DirecTV is locked in an ongoing technological battle with "pirates" who attempt to surreptitiously decrypt DirecTV's satellite programming. Over the past few years, DirecTV has engaged in an aggressive campaign against such piracy, using as its primary weapons civil raids and lawsuits against manufacturers, marketers, and customers of pirate access devices.

---

[1]These facts are culled from the affidavit of James F. Whelan, an investigator of satellite signal theft for DirecTV.

### 2. Facts Regarding Ronnie C. Riddle

Defendant Riddle came to DirecTV's attention during discovery in a case originally brought against Lloyd Yancey. The origin of the suit was a civil raid on January 24, 2002, upon a business named "EQ Stuff" and Michael Worley, operator of said business. EQ Stuff is physically located in St. Augustine, Florida, but conducts business nationwide via the Internet. EQ Stuff focuses on distributing electronic devices primarily used by pirates to access programming sold by plaintiff. Defendant Riddle purchased a total of ten (10) such pirate access devices – six (6) "EQ Bootloaders" purchased on July 17, 2001 and another four (4) "EQ Bootloaders" purchased on August 5, 2001– from EQ Stuff. These devices were invoiced to defendant Yancey. Plaintiff alleges that defendant Riddle engaged in an enterprise to distribute and/or resell these devices purchased from EQ Stuff, and that, upon all reasonable likelihood, Riddle used these devices to facilitate viewing of DirecTV without payment.

### 3. Substantive Legal Analysis

#### a. Default Judgment

Service was validly effected on Riddle under Fed. R. Civ. P. 4 and Va. Code Ann. § 8.01-296, but Riddle has not appeared in this action and has failed to plead or otherwise defend the action. As a result, the averments, not denied, contained in the Amended Complaint are deemed to have been admitted. Fed. R. Civ. P. 8(d). Riddle has not answered the Amended Complaint or responded to the motion for entry of default judgment. Though properly served, Riddle has made no appearance but simply has chosen to ignore these proceedings. As a consequence, under Fed. R. Civ. P. 55(b)(2), Riddle is not entitled to any notice of the entry of a default judgment against him.

3

A hearing in open court is not required to enter default judgment under the circumstances of this case. DirecTV has presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits. Under these circumstances, and given the statutory nature of the damages claims in this case, there is no need to convene a formal evidentiary hearing on the issue of damages. See, e.g., Frame v. S-H, Inc., 967 F.2d 194, 204 (5th Cir. 1992) (noting "[i]f the damages can be computed with certainty by reference to the pleadings and supporting documents alone, an evidentiary hearing may not be necessary.").

      **b.**      **Counts 1 and 3 – Communications Act.**

In Count 1 of its complaint, DirecTV alleges that Riddle violated the Communications Act, 47 U.S.C. § 605(e)(3), through the unauthorized interception and receipt of satellite programming. In Count 3 of its complaint, DirecTV alleges that Riddle knowingly manufactured or assembled an electronic, mechanical, or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily to facilitate unauthorized decryption of satellite programming, or some other prohibited activity in violation of the Communications Act. Specifically, DirecTV alleges that Riddle actively programmed and reprogrammed DirecTV Access Cards and designed electronic systems for use in surreptitiously obtaining DirecTV satellite programming in violation of 47 U.S.C. § 605(e)(4).

Additionally, DirecTV seeks injunctive relief for violations of the Federal Communications Act of 1934, 47 U.S.C. § 605(a), which contains a general prohibition against the unauthorized use of certain communications. As Riddle is in default, the allegations of the Complaint against him are taken as true. Fed. R. Civ. P. 8(d). As such, the evidence submitted supports the conclusion that Riddle impermissibly decrypted DirecTV's signal in his home (a

4

violation of Count 2) for his own viewing pleasure, that Riddle was otherwise in the business of profiting from the stream of commerce of pirate access devices based on his purchase of ten (10) devices (as suggested in Counts 1 and 3), and that he converted DirecTV's programming to his own use (a violation of Count 4). Because Riddle bought and used at least ten (10) pirate access devices to restore functionality to disabled DirecTV access cards, violations of the Communications Act are established.

Under 47 U.S.C. § 605(e)(C)(I), a plaintiff can elect to seek actual damages (subsection I) or statutory damages (subsection II). DirecTV seeks these damages in the alternative. As regards statutory damages, the Communications Act provides for damages "at a sum not less than $1,000 or more than $10,000, as the court considers just." Under the wide discretion accorded courts under this provision, various courts have awarded amounts both at the maximum, see, e.g., DirecTV, Inc. v. Mullins, No. 1:03cv112 (W.D. Va. Mar. 3, 2004); DirecTV, Inc. v. Best, et al., No. 03-50220, 2004 WL 547113 (N.D. Ill. Feb. 26, 2004), and at the minimum statutory levels. See, e.g., DirecTV, Inc. v. Albright, No. 03-4603, 2003 U.S. Dist. LEXIS 23811 (E.D. Pa. Dec. 9, 2003); DirecTV, Inc. v. Kaas, et al., 294 F. Supp. 2d 1044 (N.D. Iowa 2003). Plaintiff seeks the maximum award.

In support of its damages award, DirecTV presents no evidence of actual damages, but suggests that its award be based on a statistical model of a high end user of pirate access devices. The Whelan affidavit makes the assertion that one with a pirate access combination package, whose marginal cost of viewing pay-per-view or other subscription programming is zero, would be at the high end of DirecTV's legitimate customers, the 90th percentile of which have an average monthly bill of $229.08, or an annual bill of $2,748.96. Applying this estimate to the 10

devices would yield damages around $27,500.00. Although some courts have awarded damages based on just such an estimate, see, e.g., DirecTV v. Best, 2004 WL 547113 at *2, such an award is somewhat speculative in that it assumes that Riddle unlawfully viewed DirecTV's programming at the highest end of the potential viewing spectrum.

While such a statistical average may well be accurate, there simply is no evidence as to when, how often and for what programming Riddle used the pirate access device. However, Congress allows a statutory damage award up to $10,000. It has been established that Riddle purchased ten (10) access devices which is consistent with plaintiff's allegation that defendant Riddle engaged in an enterprise to distribute and/or resell them. This is not a case involving one device for an individual's home use. Indeed, given the number of devices purchased, it is appropriate to conclude that Riddle attempted to resell these devices and to profit from such resale. Therefore, the court believes that damages at the upper end of the statutory range is appropriate. Therefore, the court exercises its discretion to award DirecTV statutory damages of $10,000 for Count 1 and $10,000 for violation of Count 3.

### B. Count 2 - Wiretap Act

This count is brought under provisions of the Electronic Communications Privacy Act, 18 U.S.C. § 2510-2521 ("The Wiretap Act"). Count 2 alleges a violation of 18 U.S.C. § 2511, which prohibits the intentional interception and use of electronic communications such as those in this case. Section 2520 creates a private cause of action for these violations of the Wiretap Act.

In any event, the court exercises its discretion to decline to award any statutory damages under § 2520, as any such recovery would be duplicative. Though Riddle's conduct is

6

reprehensible, his violations are not as egregious as those in the business of manufacturing or marketing pirate access devices, or those owners of public establishments who show unauthorized programming to increase sales, and thereby profit from their conduct. The $20,000 statutory award on Counts 1 and 3 should serve as a sufficient deterrent to prevent any further violations.

    c.    **Count 4 - Conversion**

Court four of the complaint alleges common-law conversion of DirecTV's property. Available damages for this common-law cause of action include both compensatory damages for DirecTV's pecuniary loss and punitive damages to discourage others from engaging in the same sort of "misconduct [and] conscious disregard of the rights of others" as particular defendants have engaged in. See, e.g., PGI, Inc. v. Rathe Prods., Inc., 265 Va. 334, 336 (2003). As it did with Count 2, the court will use its discretion to avoid awarding damages under this count under the belief that the $20,000 awarded relative to Counts 1 and 3 provides enough incentive to discourage defendant's future misconduct.

    d.    **Injunctive Relief**

Under 47 U.S.C. § 605(e)(3)(B(I), a court is empowered to grant final injunctions it deems reasonable to prevent or restrain violations of § 605(a). It is appropriate to do so here. Defendant Riddle is hereby permanently enjoined from receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DirecTV satellite transmissions without DirecTV's authorization. Defendant is to surrender to DirecTV all illegally modified access cards and pirate access devices in his possession or control.

### 4. Attorneys Fees and Costs

Section 605 (e)(3)(B)(iii) instructs courts to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." DirecTV has submitted an affidavit and attorneys' fee statement claiming a total of $5,622.11, plus an additional $500 expected in legal fees yet to be billed. DirecTV claims costs of $170.11, including the $150 filing fee, all of which are recoverable. DirecTV seeks attorneys fees totaling $5,452.00, and this sum, supported by documentation, appears reasonable and appropriate given the facts of this case involving multiple purchases. The court will not award fees for work that has not been billed and is not outlined in plaintiff's attorney's affidavit. The total award of costs plus attorneys' fees is therefore $5,622.11.

### 5. Conclusion

Plaintiff's motion for default judgment is GRANTED and judgment will be entered in favor of the Plaintiff in the total amount of $25,622.11. Defendant is PERMANENTLY ENJOINED from unauthorized use of DirecTV services and is to SURRENDER to DirecTV any pirate access devices, including the ten (10) pirate access "EQ Bootloader" devices, and any other modified or reprogrammed DirecTV access cards in his possession.

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to counsel of record and to Defendant Ronnie Riddle.

Enter this 12 day of December, 2005.

Michael F. Urbanski
United States Magistrate Judge